# IN THE SUPREME COURT OF TEXAS

════════════

No. 15-0094

════════════

CITY OF DALLAS, PETITIONER,

v.

DIANE SANCHEZ, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF
MATTHEW SANCHEZ, DECEASED, AND ARNOLD SANCHEZ, RESPONDENTS

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

## PER CURIAM

Hours before Matthew Sanchez died from a drug overdose, a 9-1-1 operator dispatched an ambulance to his apartment complex. Once on scene, however, emergency personnel provided assistance to a different drug-overdose victim at the same complex and then left the premises without aiding Sanchez, erroneously concluding that two closely timed 9-1-1 calls concerning overdose victims at the same locale were redundant. In a wrongful-death suit against the City of Dallas, Sanchez's parents allege the 9-1-1 telephone system malfunctioned and disconnected Sanchez's call before the responders could establish the overdose reports were not duplicative.

The issue in this Rule 91a dismissal proceeding is whether the Texas Tort Claims Act waives the City's immunity from suit based on allegations in the wrongful-death suit that a condition of the City's telephone system proximately caused Sanchez's death by preventing him from receiving potentially life-saving medical care. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2) (providing a

limited waiver of governmental immunity arising from the "condition or use" of tangible personal property); TEX. R. CIV. P. 91a (authorizing dismissal of a cause of action that has no basis in law or fact). We hold governmental immunity is not waived and dismissal is required because the requisite causal nexus between the alleged condition and Sanchez's injury is lacking. *See Dallas County v. Posey*, 290 S.W.3d 869, 872 (Tex. 2009) (the alleged condition must actually have caused the injury to invoke the Tort Claims Act's immunity waiver; mere involvement of property is not sufficient). We therefore reverse the court of appeals' judgment and render judgment dismissing the case.

Dismissal is appropriate under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought . . . [or] no reasonable person could believe the facts pleaded." TEX. R. CIV. P. 91a.1. Whether the dismissal standard is satisfied depends "solely on the pleading of the cause of action." TEX. R. CIV. P. 91a.6. We review the merits of a Rule 91a motion *de novo* because the availability of a remedy under the facts alleged is a question of law and the rule's factual-plausibility standard is akin to a legal-sufficiency review. *See Wooley v. Shaffer*, 447 S.W.3d 71, 75-76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *cf. Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011) (application of the law to undisputed facts is reviewed *de novo*); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) ("[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.").

The dismissal grounds under Rule 91a have been analogized to a plea to the jurisdiction, which requires a court to determine whether the pleadings allege facts demonstrating jurisdiction. *See Wooley*, 447 S.W.3d at 75. In this case, the analogy is particularly apt because the City's Rule

2

91a motion challenges the trial court's subject-matter jurisdiction on the pleaded facts. Whether a pleader has alleged facts affirmatively demonstrating the existence of subject-matter jurisdiction is a question of law reviewed *de novo*. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *see also Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam) ("We review jurisdiction and pleading sufficiency *de novo*."). To determine whether dismissal under Rule 91a is required in this case, we thus consider whether the pleadings, liberally construed, allege sufficient facts to invoke a waiver of governmental immunity under the Tort Claims Act. *Miranda*, 133 S.W.3d at 226; *see also Ryder Integrated*, 453 S.W.3d at 926.

In the early hours of November 16, 2012, City of Dallas 9-1-1 dispatchers received two 9-1-1 calls within approximately ten minutes of one another. Both calls originated from the same apartment complex and both requested assistance for a drug-overdose victim; however, the calls were placed from different phone numbers and concerned different residents.

This wrongful-death and survival action arises from the second 9-1-1 call, which was placed at 2:55 a.m. on Matthew Sanchez's behalf. The 9-1-1 dispatcher acquired information regarding the nature of the emergency and Sanchez's address, including the apartment number, and informed the caller that emergency responders were en route. The call was subsequently disconnected and not reestablished. After emergency responders arrived at the apartment complex to assist the subject of the first 9-1-1 call, they erroneously concluded that the two 9-1-1 calls were redundant and that a single individual was the subject of both calls. Consequently, the emergency responders never went to Sanchez's apartment to provide aid. Sanchez died at approximately 8:40 a.m.

3

Sanchez's parents sued the City of Dallas for negligence alleging: (1) the City's 9-1-1 dispatcher misused the phone system by hanging up before emergency responders arrived to assist Sanchez, or in the alternative, the 9-1-1 phone system malfunctioned, causing the call to disconnect prematurely; (2) the 9-1-1 dispatcher failed to follow proper procedure and violated various federal, state, and local laws and regulations by either disconnecting the call or failing to redial after the call disconnected; and (3) if the emergency responders had located Sanchez before leaving the premises, they "would have most likely saved [his] life."

In a Rule 91a motion to dismiss asserting governmental immunity from suit, the City argued the allegations in the lawsuit did not invoke a waiver of immunity under the Tort Claims Act because (1) the allegations complained about communication of information and the failure to dispatch an ambulance, not a condition or misuse of tangible property, and (2) Sanchez's death was caused by a drug overdose, not the 9-1-1 telephone system. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2). Alternatively, to the extent immunity might otherwise be waived under the Tort Claims Act, the City asserted the pleadings failed to overcome a statutory exception making the Act inapplicable to 9-1-1 emergency services, except for actions that "violate[] a statute or ordinance applicable to the action." *Id.* § 101.062(b).

The trial court granted the City's motion to dismiss as to all claims except the allegation that the 9-1-1 phone system failed or malfunctioned. On interlocutory appeal, the court of appeals affirmed, holding Sanchez's parents (1) sufficiently alleged a defect in the phone system proximately caused his death and (2) adequately pleaded a violation of a statute or ordinance as an exception to

4

section 101.062's waiver exclusion.[1]  499 S.W.3d 645, 653-54.

We have jurisdiction over the City's petition for review because the court of appeals' decision is inconsistent with our decisions in *Dallas County v. Posey*, 290 S.W.3d 869 (Tex. 2009), and *Texas Department of Criminal Justice v. Miller*, 51 S.W.3d 583 (Tex. 2001).  *See* TEX. GOV'T CODE §§ 22.001(a)(2), (e), 22.225(b), (c), (e), 51.014(a)(8); *see also Austin State Hosp. v. Graham*, 347 S.W.3d 298, 300 (Tex. 2011).

The Texas Tort Claims Act waives governmental immunity from suit for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."  TEX. CIV. PRAC. & REM. CODE § 101.021(2).  For immunity to be waived under section 101.021(2), "personal injury or death must be proximately caused by a condition or use of tangible personal or real property."  *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342-43 (Tex. 1998).  To establish a waiver of the City's immunity under section 102.021(2), we must therefore determine whether the phone's condition was a proximate cause of Sanchez's death.

Proximate cause requires both "cause in fact and foreseeability."  *Ryder*, 453 S.W.3d at 929. For a condition of property to be a cause in fact, the condition must "serve[] as 'a substantial factor in causing the injury and without which the injury would not have occurred.'"  *Id.* (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010)).  When a condition or use of property merely furnishes a circumstance "that makes the injury possible," the condition or use is not a

---

[1] The court of appeals also affirmed dismissal of the Sanchezes' negligent use/misuse claim, but they have not appealed that ruling.

substantial factor in causing the injury. *Bossley*, 968 S.W.2d at 343. To be a substantial factor, the condition or use of the property "must actually have caused the injury." *Posey*, 290 S.W.3d at 872 ("This nexus requires more than mere involvement of property; rather, the condition must actually have caused the injury."). Thus, the use of property that simply hinders or delays treatment does not "actually cause[] the injury" and does not constitute a proximate cause of an injury. *See Miller*, 51 S.W.3d at 588.

In *Miller*, prison staff misdiagnosed a prisoner's meningitis and provided treatment—including pain-relievers, anti-nausea medicine, and fluids—that masked the symptoms and made it more difficult to correctly diagnose the meningitis. *Id.* We concluded the treatment was not a proximate cause of the prisoner's death because it "did not actually cause his death." *Id.* Instead, the prisoner's death was caused by meningitis, "the passage of time[,] and an alleged error in medical judgment." *Id.*

Even construing the pleadings liberally, *see Miranda*, 133 S.W.3d at 226, the alleged telephone-system malfunction was not a proximate cause of Sanchez's death. Between the alleged malfunction and Sanchez's death, emergency responders erroneously concluded separate 9-1-1 calls were redundant and left the apartment complex without checking the specific apartment unit the dispatcher had provided to them. Moreover, approximately six hours passed between the phone malfunction and Sanchez's death, further attenuating the causal connection. Although disconnection of the telephone call may have contributed to circumstances that delayed potentially life-saving assistance, the malfunction was too attenuated from the cause of Sanchez's death—a drug overdose—to be a proximate cause. *See Bossley*, 968 S.W.2d at 343 (use of property is not a

6

proximate cause when it is too attenuated from the injury). The alleged defect did not actually cause Sanchez's death nor was his death "hastened or exacerbated" by a telephone malfunction. *See Posey*, 290 S.W.3d at 872; *Miller*, 51 S.W.3d at 588. The malfunction was merely one of a series of factors that contributed to Sanchez not receiving timely medical assistance. *See Miller*, 51 S.W.3d at 588. Sanchez's death was caused by drugs, the passage of time, and misinterpretation of information. *See id.* (concluding the death was caused by meningitis, time, and an alleged error in judgment, not by symptom-masking treatment). Accordingly, the pleadings do not establish a defect in the 9-1-1 telephone system was a proximate cause of Sanchez's death as required to establish a waiver of governmental immunity under the Tort Claims Act.

Without hearing oral argument, we reverse the court of appeals' judgment and render judgment dismissing the case. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED**: July 1, 2016

7